IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN ANTHONY MATTHEWS, JR.
#317-748                                          *

      v.                               *              CIVIL ACTION NO. CCB-14-1186

FRANK B. BISHOP, JR.                              *

*****

**MEMORANDUM**

     John Anthony Matthews, Jr. ("Matthews") brings this suit pursuant to 42 U.S.C. § 1983.

Frank B. Bishop, Jr. ("Bishop") has filed a motion to dismiss or, in the alternative, motion for

summary judgment.[1] (Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J., ECF No. 20.)

Matthews has filed a response in opposition. (Pl.'s Resp. in Opp'n, ECF No. 24.) The matter is

ripe for disposition.[2] No hearing is needed to resolve the issues presented.[3] *See* Local Rule 105.6

(D. Md. 2014).

**BACKGROUND**

**I.  Matthews' Claims**

     Matthews is an inmate housed at North Branch Correctional Institution ("NBCI") in

Cumberland, Maryland. He filed suit on April 10, 2014, alleging Bishop improperly promulgated

a policy "which transformed and consequently classified" his housing unit, Housing Unit 2, a

general population unit, into a "Special Management Housing Unit." (Pl.'s Compl., ECF No. 1,

---

[1]  Frank B. Bishop is the warden at North Branch Correctional Institution ("NBCI"). Dep't of Pub. Safety & Corr. Facilities, *N. Branch Corr. Inst.*, http://www.dpscs.state.md.us/locations/nbci.shtml.

[2]  Also pending are Matthews' motions for a preliminary injunction, for leave to file an amended complaint, and to appoint counsel, which will be addressed herein. (ECF Nos. 25, 27, 28.)

[3]  On June 26, 2015, Matthews filed a motion for appointment of counsel, stating he anticipates a trial in this case and his imprisonment will greatly limit his ability to litigate the issues. (ECF No. 28.)  Matthews has adequately presented his claims and replied to the defendant's dispositive motion.  No extraordinary circumstances are presented to warrant appointment of counsel.  Accordingly, the motion will be denied by separate order to follow.

at 1.) As a result, Matthews claims the defendant unlawfully discriminated against him by denying him equal opportunities and benefits accorded to inmates in other general population housing units. (*Id.* at 2.)

Specifically, Matthews alleges inmates in other general population units receive daily showers, are eligible to apply for "preferred" job assignments that entitled them to receive diminution credits, and participate in educational and recreational programs. (*Id.*) He claims, as a resident of Housing Unit 2, he was "subjected to harsh Super MAX-like conditions" without prior notice or hearing, despite being part of the general prison population and receiving only one rule infraction during more than eleven years of incarceration. (*Id.*) As relief, he is requesting compensatory and punitive damages and the termination of Bishop as Warden of NBCI.[4] (*Id.* at 3.)

Matthews presented these allegations through internal grievance channels. On February 6, 2014, Matthews filed an Administrative Remedy Procedure ("ARP") request. (*Id.* at 6, Ex. C.) Matthews' request claims he was only permitted to purchase at the commissary twice each month, participate in recreation every other day, and shower twice weekly. (*Id.*) He alleges inmates in other housing units were permitted to purchase at the commissary three times each month, participate in recreation daily, and shower daily. (*Id.*) Matthews requested inmates in his housing unit be given the same opportunities as inmates housed in other units. (*Id.*) The request was dismissed by Bishop for lack of merit on February 24, 2014. (*Id.*) Matthews appealed Bishop's dismissal to the Commissioner of Correction on March 3, 2014. (Pl.'s Mot. for Leave

---

[4]  Matthews filed a motion to amend the complaint to add former Secretary of the Department of Public Safety and Correctional Services, Gregg L. Hershberger ("Hershberger"), as a defendant. (Pl.'s Mot. for Leave to File Am. Compl., ECF No. 27.) As Hershberger has since retired from the position, *see* Dep't of Pub. Safety & Corr. Facilities, *Former Secretaries*, http://msa.maryland.gov/msa/mdmanual/22dpscs/former/html/msa16872.html, the motion to amend will be denied. Furthermore, for reasons later discussed, Matthews is not entitled to relief anyway. *See infra*, at 6-10.

to File Am. Compl., ECF No. 16-2, at 2-3, Ex. N.) Matthews filed a grievance with the Inmate Grievance Office ("IGO") on March 31, 2014. (*Id.* at 4-6, Ex. O.) The grievance was dismissed by the IGO on May 22, 2014 for failing to properly exhaust the appeals process with the Commissioner first. (*Id.* at 8, Ex. P.)

## II. Defendant's Response

The defendant asserts Matthews' claims against him are barred by sovereign immunity, qualified immunity, and Matthews' failure to exhaust administrative remedies, as well as for failure to state a claim upon which relief may be granted because the facts do not allege a violation of a constitutionally protected liberty interest. (Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J., at 1.) The defendant has filed declarations and verified copies of portions of Matthews' prison records in support of his dispositive motion. (*See* ECF 20-2, -3, -4.)

In his declaration, William S. Bohrer ("Bohrer"), Chief of Security at NBCI, attests that on August 5, 2013, a correctional officer was severely assaulted and required hospitalization. (Bohrer Decl., ECF 20-2, at 1.) The assault on staff was one of several that took place over a two-month period, and the entire institution was placed on emergency lockdown to permit the administration to evaluate safety and security at NBCI. (*Id.* at 2.) Bobby Shearin, who was NBCI Warden at the time, ordered NBCI staff to interview every inmate at the facility to assist in evaluating their security risk and to ensure each was appropriately housed based on demeanor and behavioral history. (*Id.*)

According to Bohrer, Housing Unit 2 is a general population unit. (*Id.*) It remained on modified lockdown status for a number of months. (*Id.*) All movement outside of Housing Unit 2 by inmates in that unit was done under escort until May 16, 2014, when the Chief of Security authorized un-cuffed escorts. (*Id.* at 3.) Since July 11, 2014, maximum security inmates,

including those in Housing Unit 2, have been permitted to participate in outside recreation and are allowed regular visits in the visiting room. (*Id.* at 3-4.) Since August 4, 2014, inmates in A- and B-Tiers of Housing Unit 2 are permitted to walk to meals in the dining hall on the day shift. (*Id.* at 4). Bohrer attests since June 2014, "Housing Unit 2 has completely come off of lockdown and is running under normal operations." (*Id.*) He later states that, beginning August 4, 2014, "the modified lockdown status was lifted and Housing Unit 2 began normal operations."[5] (*Id.* at 4.)

Matthews is a maximum security inmate, (*id.*), who is serving a life sentence for first-degree murder. (White Decl., ECF No. 20-3, at 3.) Matthews received an infraction on October 11, 2013, while housed at Patuxent Institution.[6] After a disciplinary hearing, Matthews was sentenced to sixty days of administrative segregation on October 12, 2013. (*Id.*, at 20.) On November 19, 2013, he was transferred to NBCI and placed in Housing Unit 1 to complete his sixty-day term of disciplinary segregation. (Bohrer Decl., at 3.) Matthews completed his disciplinary sanction on December 10, 2013. (*Id.*) Due to limited movement and bed availability in Housing Unit 2 as a result of the lockdown, however, Matthews remained in Housing Unit 1 until January 17, 2014, when he was moved to D-Tier of Housing Unit 2.[7] (*Id.*)

On January 17, 2014, Matthews met with his case manager and was recommended for a sanitation job. (*Id.*) He was approved for a sanitation job on January 24, 2014. (*Id.*) On September 16, 2014, Matthews was approved for a dietary job assignment. (*Id.* at 4.)      On

---

[5]  These statements appear to be in conflict and are not otherwise explained by defendant.

[6]  A hearing officer found Matthews guilty of violating Rules 117 (engaging in a sexual act) and 402 (being in a location without authorization) after evidence was introduced that he had engaged in sexual intercourse with an inmate in a restroom at Patuxent Institution.  (White Decl., at 13-20.)

[7] Matthew's claims are predicated on his housing in Unit 2. He does not raise any claims about the disciplinary proceedings that led to his sixty-day disciplinary sanction or the conditions of his confinement in Housing Unit 1.

November 19, 2014, he was assigned to a sanitation job. (Pl.'s Mot. for Prelim. Inj., ECF 25-1, 3-4.)

## STANDARD OF REVIEW

The court recognizes that Matthews is a self-represented litigant and accords his pleadings liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Bishop's dispositive motion will be treated as a motion for summary judgment under Rule 56(a) because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airway*s, 510 F.3d 442, 450 (4th Cir. 2007).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Id.* at 247. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

5

**ANALYSIS**

**I.  Failure to Exhaust Administrative Remedies**

The defendant asserts Matthews has failed to exhaust his administrative remedies. The Prisoner Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The exhaustion requirement allows a prison to address complaints about the program it administers before being subjected to suit, reduces litigation to the extent complaints are satisfactorily resolved, and improves litigation that does occur by creating a useful record. *Blake v. Ross*, 787 F.3d 693, 697-98 (4th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)). The exhaustion requirement "has been interpreted to require prisoners to pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F.Supp.2d 523, 530 (D. Md. 2003). The requirement does not require the exhaustion of administrative processes unavailable to a prisoner. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Blake*, 787 F.3d at 697 (quoting *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)). Conversely, "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are." *Moore*, 517 F.3d at 725.

In Maryland, filing a request for an administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the ARP process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner

6

has thirty days in which to file an appeal to the Executive Director of the IGO. *See* Md. Code. Ann., Corr. Servs. §§ 10–201 to 210. The Executive Director shall dismiss a grievance as lacking in merit if "[t]he grievant did not properly exhaust remedies available under the administrative remedy procedure . . . ." COMAR 12.07.01.06(B)(4).

Matthews' ARP request was denied on February 24, 2014. (Pl.'s  Compl., at 6, Ex. C.) Matthews filed an appeal to the Commissioner on March 3, 2014. (ECF No. 16-2, at 2, Ex. N.) The Commissioner's response would have been due 30 days after receipt of the appeal, or April 2, 2014, if the appeal was received the same day it was filed. (*Id.* at 8, Ex. P.) Matthews filed a grievance with the IGO on March 31, 2014, without waiting for the Commissioner's decision. (*Id.*) On May 22, 2014, the IGO dismissed the grievance for failure to properly exhaust the appeals process with the Commissioner. (Oakley Decl., ECF No. 20-4, at 2-3.)

Because Matthews did not wait for the Commissioner's response to his appeal before filing a grievance with the IGO, Matthews failed to exhaust his administrative remedies. Accordingly, even when drawing all inferences in favor of Matthews, the court finds there are no genuine issues of material fact regarding Matthews' failure to exhaust administrative remedies as required by the PLRA. The defendant's Motion for Summary Judgment will be granted.

## II.  Due Process

Even if Matthews had exhausted his administrative remedies as required by PLRA, he has not shown a constitutional due process violation. Prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Wilkinson v. Austin,* 545 U.S. 209, 222-23 (2005). Determining whether this standard has been met "necessarily is fact specific . . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997). "[H]arsh or atypical prison conditions in and of themselves [do not] provide the basis of a liberty interest

giving rise to Due Process protection." *Prieto v. Clarke*, 780 F.3d 245, 250 (4th Cir. 2015). Rather, inmates must first establish that an interest in avoiding onerous or restrictive confinement conditions "arise[s] from state policies or regulations." *Id.* (quoting *Wilkinson*, 545 U.S. at 221-22). The Fourth Circuit uses the general prison population as the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentences. *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015).

In this case, prison security measures placed the entire correctional facility on emergency lockdown so that each inmate could be interviewed to evaluate his proper housing placement in light of several incidents that had threatened the safety and security of the institution. It is not the province of this court to determine how a prison might be better managed, and the expertise of prison officials must be given due deference. *See Sandin*, 515 U.S. at 482 ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment."). The rationale for such deference "is greatest when the maintenance of prison order is at stake." *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir. 2003). It is also important to note that the restrictions in Housing Unit 2 were imposed for a limited purpose and time period, and were gradually lifted as deemed appropriate with concerns of institutional security. Finally, an inmate's expectation of keeping or obtaining a specific prison job does not implicate a constitutionally protected interest. *See Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) ("[W]ork assignments of prisoners . . . are matters of prison administration, within the discretion of prison administrators," and do not implicate the Due Process Clause.).

In light of the above, the court concludes no liberty interest was implicated or violated in

the decisions associated with Matthews' placement in Housing Unit 2. Thus, even when drawing all inferences in favor of Matthews, the court finds there are no genuine issues of material fact, and the defendant is entitled to summary judgment in his favor.

### III. Preliminary Injunctive Relief

Matthews is requesting a preliminary injunction to restrain the defendant and his staff from denying him a job in the dietary department and from "interfer[ing] with [his] progress in this institution." (Pl.'s Mot. for Prelim. Inj., at 2.) A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 676 (2008). For injunctive relief to be granted, a claimant must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Matthews does not satisfy this standard. For reasons discussed earlier, Matthews does not show the likelihood of succeeding on the merits. Furthermore, he does not show the likelihood of suffering irreparable harm, nor is the balance of equities in his favor. In light of the deference accorded to prisons on issues of management and security, Matthews fails to show how preliminary injunctive relief would be in the public interest. Accordingly, the plaintiff's motion for a preliminary injunction will be denied.

### CONCLUSION

For the foregoing reasons, the plaintiff's motions for leave to file an amended complaint, to appoint counsel, and for a preliminary injunction will be denied. Summary judgment will be granted in favor of the defendant. A separate order follows.

September 14, 2015            /S/
Date            Catherine C. Blake
         United States District Judge